UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EILEEN A. WEINER, individually and
as trustee of the Eileen A. Weiner Inter
Vivos Trust,

        Plaintiff,

                                    File No.  1:06-CV-642

v.

                                    HON. ROBERT HOLMES BELL

JOSHUA T. WEINER, individually,

        Defendant.

_____/

## **O P I N I O N**

In this action Plaintiff Eileen A. Weiner challenges the manner in which her brother, Defendant Joshua T. Weiner, is managing certain closely held family companies.  In her first amended complaint Plaintiff seeks financial information, an accounting, damages, imposition of a constructive trust, and other equitable relief.  (Dkt. No.  12.)  This matter is currently before the Court on Plaintiff's motion for partial summary judgment on her request for an accounting (Dkt. No. 36), Defendant's motion for summary judgment (Dkt. No. 57), and Plaintiff's motion for leave to file supplemented first amended complaint (Dkt. No. 74).  For the reasons that follow the motions for summary judgment will be denied and the motion for leave to file will be granted.

## I.

Plaintiff Eileen A. Weiner and Defendant Joshua Weiner are the children of Meyer C. Weiner and Esther T. Weiner.  Plaintiff is a citizen of the State of California and Defendant is a citizen of the State of Michigan.  In 1948 Meyer C. Weiner began a real estate development business.  Each property he bought was owned by a separate legal entity comprised of a slightly different mix of owners, including himself, his wife, his children, and key employees.  (Dkt. No.  58, Def.'s Br. in Supp. of Mot. for Summ. J., Ex. A, J. Weiner Aff. ¶¶ 1-2.)  In 1971 Defendant formally joined his father as a partner in his business activities.  (*Id.* at ¶ 14.)

Defendant and his father created the Meyer C. Weiner Company ("MCW Co.") to provide all development and leasing services to the real estate projects, and the Chessler Corporation ("Chessler") to provide management services to the real estate projects.  (*Id.* at ¶¶ 15-17.)  In 1984 Defendant became the principal decision-maker and CEO of MCW Co.  (*Id.* at ¶ 23.)  Defendant ran the business in the same manner as his father had:  he continued to gift small percentages of ownership in entities he created to family members and key employees, continued to make unsecured, interest-free, inter-affiliate advances on an as-needed basis, and continued to accrue leasing, management and development fees owed by the real estate entities to MCW Co. and Chessler until the entities were able to pay those fees.  (*Id.* at ¶¶ 4, 7, 20, 24.)  After Meyer C. Weiner died in 2001, Defendant became the sole owner of MCW Co. and Chessler and became the majority owner in all but two of the entities created by his father.  Esther T. Weiner died in 2005.

Plaintiff and Defendant currently share interests in twenty-seven real estate entities (the "Joint Entities") originated by Meyer C. Weiner, and/or Defendant Joshua Weiner. Each of the Joint Entities owns, operates, and manages a separate single-purpose real estate development. The Joint Entities include sixteen limited partnerships, ten limited liability companies ("LLCs"), and one corporation. (Dkt. No. 12, Am. Compl. ¶ 1; J. Weiner Aff. ¶ 30.) Plaintiff received her interests in the Joint Entities by gift or inheritance. Defendant is the sole managing member, general partner, or director of the Joint Entities and exercises exclusive control over their day-to-day management. (Am. Compl. ¶¶ 3, 4; J. Weiner Aff. ¶ 31.) Defendant is the majority owner in all of the Joint Entities except two in which Defendant and Plaintiff own equal interests: Balboa-Genessee and Mansard House. Plaintiff's average interest in the Joint Entities is 20%. (J. Weiner Aff. ¶ 32.) Defendant owns an interest in twelve or thirteen additional companies in which Plaintiff has no ownership interest (the "Josh Companies") that also receive management services from MCW Co. and Chessler. (Dkt. No. 36, Pl.'s Mot. for Partial Summ. J., Ex. 3, Ans. to Interrog. 2; Dkt. No. 36, Ex. 12, Bodenberg Dep. 12.)

After the death of Esther T. Weiner in 2005, Plaintiff began requesting documentation from Defendant regarding the operation of the Joint Entities. Plaintiff was particularly concerned about loans from the Joint Entities (entities in which Plaintiff has an ownership interest) to the Josh Companies (entities in which Defendant has an ownership interest but Plaintiff does not), and the increase in management fees being charged by MCW Co. and Chessler. Plaintiff ultimately filed this action. Plaintiff's amended complaint

alleges four causes of action: 1) denial of statutory right to financial information; 2) breach of duties as manager; 3) breach of contract; and 4) accounting. Defendant has moved for summary judgment on all of Plaintiff's claims and Plaintiff has moved for partial summary judgment on her request in Count IV for an accounting.

## II.

### A. Standing

Defendant contends he is entitled to summary judgment on all of Plaintiff's claims because they are derivative in nature. According to Defendant, even if Plaintiff's claims are proven to be true, she has not alleged any individual injury separate and distinct from the Joint Entities or their other owners, and therefore she has no standing to bring her individual claims. Defendant further contends that Plaintiff cannot amend her complaint to assert a claim on behalf of the Joint Entities because the addition of the Entities would destroy the Court's diversity jurisdiction.

In response, Plaintiff contends she has standing because Michigan law authorizes her to raise a direct claim for minority oppression.

Defendant's standing argument is essentially a motion for judgment on the pleadings. The standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is nearly identical to that employed for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). In reviewing a Rule 12(c) motion the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual

4

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). However, the court does not need to accept as true legal conclusions or unwarranted factual inferences. *Kottmyer*, 436 F.3d at 689.

"The doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 474, 666 N.W.2d 271 (2003) (citing *Mich. Nat'l Bank v. Mudgett*, 178 Mich. App. 677, 679, 444 N.W.2d 534 (1989)). An exception exists, however, when the individual can show "a violation of a duty owed directly to the individual that is independent of the corporation." *Id.*

Minority shareholder oppression claims are specifically allowed by the Michigan Business Corporation Act (MBCA), M.C.L. §§ 450.1101-.2099. Section 489 of the MBCA provides that a shareholder may bring an action to establish that the acts of the directors or those in control of the corporation are "illegal, fraudulent, or willfully unfair and oppressive to the corporation **or to the shareholder**." M.C.L. § 450.1489(1) (emphasis added). Section 489 "creates a statutory cause of action along with flexible discretionary remedies to shareholders of closely held corporations." *Estes v. Idea Eng'g & Fabrications, Inc.*, 250 Mich. App. 270, 278, 649 N.W.2d 84 (2002). "[T]his statutory cause of action for 'oppression' in favor of minority shareholders who are abused by 'controlling' persons, is

a direct cause of action, not derivative, and though similar to a common-law shareholder equitable action, provides a separate, independent, and statutory basis for a cause of action." *Id.*

The Michigan Limited Liability Company Act (LLCA), M.C.L. §§ 450.4101-.5200, similarly provides for minority oppression claims. The LLCA provides that a member of an LLC may bring an action to establish that acts of the managers or members in control of the LLC are "illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member." M.C.L. § 450.4515.

The Michigan Revised Uniform Limited Partnership Act (MLPA), M.C.L. §§ 449.1101-.2108, does not address minority oppression claims. Nevertheless, the Michigan Court of Appeals has recognized that limited partners are "free to pursue their own individual claims." *Adell v. Sommers, Schwartz, Silver & Schwartz, P.C.*, 170 Mich. App. 196, 203, 428 N.W.2d 26 (1988). *See also In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Adell* in support of the proposition that under Michigan law "limited partners have the capacity to sue on their own behalf").

Defendant is correct in his assertion that certain paragraphs of Plaintiff's amended complaint appear to be alleging derivative claims. For example, Plaintiff has alleged that Defendant breached certain duties "to the Weiner Family Companies." (Am. Compl. ¶¶ 49, 50, 55, 56.) Plaintiff has also alleged violations of § 450.1541a. (Am. Compl. ¶¶ 48, 54.) A § 541a suit "seeks to redress wrongs to the corporation," and the plaintiffs in a § 541a suit

"typically represent the corporation and bring their suits as derivative actions pursuant to § 492a." *Estes*, 250 Mich. App. at 282-83.

Although the amended complaint is not a model of clarity, Defendant is not correct in his assertion that Plaintiff is now attempting to raise a new theory by recasting her complaint as one based on "minority shareholder oppression on behalf of the Entities." (Dkt. No. 65, Def. Reply Br. 2.)   A fair reading of Plaintiff's complaint indicates that Plaintiff is bringing this case as a minority oppression case on her own behalf rather than on behalf of the Joint Entities.   The case is brought in Plaintiff's name.   Plaintiff has alleged that Defendant's cash advances from the Weiner Family Companies to Joshua Weiner's Personal Investments, and the payments and accrued liabilities to the Meyer C. Weiner Company, are "illegal, fraudulent, or willfully unfair and oppressive **to Eileen Weiner**." (Am Compl ¶¶ 53, 59 (emphasis added).)   Plaintiff has alleged that she has standing under M.C.L. §§ 449.1802, 450.4515, and 450.1489 to bring this action to establish that Defendant's conduct is "illegal, fraudulent, or willfully unfair and oppressive **to Eileen Weiner**."   (Am. Compl. ¶ 60 (emphasis added).)

The Federal Rules of Civil Procedure provide for a liberal system of notice pleading. Fed. R. Civ. P. 8(a).   A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   Plaintiff's amended complaint is sufficient to

put Defendant on notice that Plaintiff is asserting a direct claim on her own behalf rather than a derivative claim on behalf of the Joint Entities.

In *Lozowski v. Gray*, No. 257219, 2006 Mich. App. LEXIS 324 (Feb. 7, 2006) , the plaintiff alleged that the defendants misused their collective power over corporate affairs to enrich themselves at the expense of the corporation and plaintiff by funneling corporate funds to other corporations that the defendants controlled. The Michigan Court of Appeals held that the plaintiff's allegations were sufficient to allege a shareholder oppression claim. *Id*. at *11.

Like the plaintiff in *Lozowski*, Plaintiff has alleged that Defendant is using his control over the Joint Entities to funnel property from the Joint Entities to other entities that Defendant controls, at the expense of the Joint Entities and Plaintiff. These allegations are sufficient to put Defendant on notice that Plaintiff is asserting a direct claim on her own behalf rather than a derivative claim on behalf of the Joint Entities, and they are sufficient to state a claim for minority oppression.

## B. Damages

Defendant contends that even if this case can proceed as a minority oppression case, Defendant is still entitled to summary judgment because Plaintiff cannot show that she has suffered an individual injury that is separate and distinct from the Joint Entities or the other owners or that her interest has been affected.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In order to bring a minority oppression claim, an individual must show a violation of a duty owed directly to him or her.  *Mich. Nat'l Bank*, 178 Mich. App. at 679.  *See also Christner v. Anderson, Nietzke & Co., P.C.,* 433 Mich. 1, 9, 444 N.W.2d 779 (1989) ("'A stockholder may individually sue corporate directors, officers, or other persons when he has sustained a loss separate and distinct from that of other stockholders generally.'"  (quoting 19 Am. Jur. 2d *Corporations* § 2245)).  "This exception does not arise, however, merely because the acts complained of resulted in damage both to the corporation and to the individual, but is limited to cases where the wrong done amounts to a breach of duty owed to the individual personally."  *Mich. Nat'l Bank*, 178 Mich. App. at 679-80 (citing *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968)).

Both the MBCA and the LLCA define "willfully unfair and oppressive conduct" as "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the [shareholder/member] as a [shareholder/member]."  M.C.L. § 450.1489(3); M.C.L. § 450.4515(2).  The MBCA and the LLCA also state that "willfully unfair and oppressive conduct" does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws,  an operating

agreement, or a consistently applied written company policy or procedure.  M.C.L. § 500.1489(3); M.C.L. § 450.4515(2).

Defendant has presented evidence that the Joint Entities are well-managed and that they have performed better than publicly traded real estate investment trusts.  (Dkt. No. 58, Ex. E, Hall Aff. ¶¶ 21, 43.)  Defendant has presented evidence that Plaintiff has received distributions in excess of any amounts to which she was entitled under the various Joint Entity agreements.  (*Id.* at ¶¶ 25-32.)  Defendant has also presented evidence that the management and leasing fees for the 1996 to 2006 time period were less than the normal rates in this area.  (*Id.* at ¶ 33.)  Defendant has presented evidence that his accountant has not seen any evidence of self-dealing, and that all inter-company loans have been properly reflected on tax returns.  (Dkt. No. 56, Ex. B, Bodenberg Aff. ¶¶ 5-6.)  Defendant contends that because Plaintiff has offered no sworn statements or documentary evidence establishing her individual damages or any evidence that her interests as a shareholder or member have been adversely affected, he is entitled to summary judgment.

Even if Defendant is correct in his assertion that the manner in which he has managed the Joint Entities does not violate the terms of any of the Joint Entity agreements, such evidence does not end the inquiry as to oppressive conduct.  Defendant's conduct is governed not only by the Entity agreements, but also by his role as a fiduciary.  "The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs."  *Band v. Livonia Assocs.*, 176 Mich. App. 95, 113, 439 N.W.2d 285 (1989).

Similarly, one who occupies a relation of trust and confidence in a corporation is required to manage the corporation "so as to produce **to each stockholder** the best possible return for his investment." *Thompson v. Walker*, 253 Mich. 126, 135, 234 N.W. 144 (1931) (emphasis added). "It is especially true, where one man or family controls and dominates a corporation, that he, or they, must act in the utmost good faith in the control and management of the corporation as to minority stockholders." *Id.* A general partner of a limited partnership is accountable to the partnership and the other partners as a fiduciary. M.C.L. §§ 449.1403(b); 449.21.

Although Plaintiff has not presented evidence of her specific or total damages, the lack of such evidence does not entitle Defendant to summary judgment. Discovery has been stayed and the expert reports on which damage calculations will be made are not yet due. (Dkt. No. 55, Order re Mot. to Stay.) Plaintiff has presented some evidence to support her claim that she has suffered damages. The evidence is undisputed that the loans from the Joint Entities to the Josh Companies are interest free, are not secured by any collateral, and have no repayment date or terms of default. (J. Weiner Aff. ¶¶ 7, 24; Dkt. No. 36, Ex. 3, Answer to Interrog. No. 1.) Plaintiff has presented evidence that between 2001 and 2005 the amount of money that is owed to the Joint Entities by the Josh Entities has grown from $195,596 to $5,807,582. (Dkt. No. 63, Pl. Resp. Br., Ex. 5, Adamy Decl. ¶ 5.) Plaintiff has presented evidence that between 2002 and 2007, management fees with respect to one of the Joint Entities has increased from 5.22% of gross receipts to 23% of gross receipts. (*Id.* at ¶ 6.) Plaintiff has presented evidence that there is a lack of written management agreements,

leases, invoices, or other detailed documentation to support accrued management and leasing fees. (Dkt. No. 36, Ex. 6, Callander Letter ¶ 8; Dkt. No. 36, Ex. 3, Answer to Interrog. No. 3(e).) Because Plaintiff has presented evidence that the Josh Companies are on the receiving end of the majority of the interest free loans, the evidence is sufficient to create an issue of fact as to whether the injury to Plaintiff as a member, partner or shareholder is separate from the injury to other members, partners, or shareholders, or at least from Defendant.

Upon review the Court is satisfied that the evidence of record is sufficient to establish genuine issues of fact for trial regarding the issue of whether Defendant has engaged in self-dealing to the detriment of Plaintiff and whether Plaintiff has suffered damages as a result.

## C. Statutes of Limitation, Laches, and Acquiescence

Defendant contends, in the alternative, that he is entitled to summary judgment because all of Plaintiff's claims are barred by applicable statutes of limitations, laches, and acquiescence.

Although statutes of limitation affect the number of years that may be considered for purposes of awarding damages, the fact that a wrong has continued for a period of years that exceeds the limitations period does not immunize a defendant from an action to redress wrongs that occur during the applicable limitations period. Plaintiff has alleged that Defendant has breached his statutory obligations and has engaged in oppressive conduct that continues to the present day. Contrary to Defendant's assertions, this case is not governed by *Bay Mills Indian Community v. Michigan*, 244 Mich. App. 739, 626 N.W.2d 169 (2001), because Plaintiff is not suing for the present effects of past wrongs committed outside the

12

limitations period. There is sufficient evidence in this record to create an issue of fact as to whether Defendant engaged in any conduct for which he might be held liable during the governing limitations periods. Accordingly, Defendant is not entitled to summary judgment on the basis of the running of the applicable statutes of limitation.

Issues of fact also preclude the entry of summary judgment in Defendant's favor on the basis of laches or acquiescence. The doctrine of laches "is applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Public Health Dep't v. Rivergate Manor*, 452 Mich. 495, 507, 550 N.W.2d 515 (1996). Acquiescence, on the other hand, "emphasizes the element of consent to that which is happening or has happened." *Holzbaugh v. Detroit Bank & Trust Co.*, 371 Mich. 432, 436, 124 N.W.2d 267 (1963). Defendant contends that this case should be barred under the equitable doctrines of laches and acquiescence because for at least thirty years Plaintiff has accepted checks, attended family meetings, signed agreements, and never requested additional records or complained about the manner in which the Joint Entities were being managed.

Defendant's argument ignores much of the substance of Plaintiff's complaint and the evidence of record. Plaintiff has alleged and presented evidence that in the years since her parents' deaths there have been changes in circumstances, including the loaning of funds from the Joint Entities to newly created Josh Companies in which she has no interest, and substantial increases in management and leasing fees. The Court cannot find, on this record, that Defendant is entitled to summary judgment on the basis of laches or acquiescence.

13

For the reasons stated above, the Court will deny Defendant's motion for summary judgment.

## III.

Also before the Court is Plaintiff's motion for partial summary judgment on Count IV, her request for an accounting. Plaintiff seeks an order appointing a forensic accountant to examine and report on the financial affairs of the Joint Entities since 1995. Plaintiff further seeks an order compelling Defendant to make available all records necessary for the accounting and to pay for the accounting. (Dkt. No. 36, Pl. Mot. for Partial Summ. J. ¶ 4.)

Defendant opposes the motion. Defendant contends that an accounting is an equitable remedy that should be used only in extraordinary circumstances after liability has been shown, and that an accounting should not be used as a substitute for discovery.

Under Michigan law a limited partner has the right to obtain, on reasonable demand, "true and full information regarding the state of the business and financial condition of the limited partnership" and "other information regarding the affairs of the limited partnership as is just and reasonable." M.C.L. § 449.1305(2). Similarly, a member of an LLC "may have a formal accounting of the limited liability company's affairs as provided in an operating agreement or whenever circumstances render it just and reasonable." M.C.L. § 450.4503(4). When a shareholder seeks judicial relief after being denied a request to inspect a corporation's records, a court may, in its discretion, order the corporation to permit the inspection "and may award other or further relief as the court may consider just and proper." M.C.L. § 450.1487(3).

14

Plaintiff contends that because she is seeking an accounting pursuant to statute rather than as an equitable remedy, the existence of a lawsuit and the discovery available in such a lawsuit are "irrelevant" to her rights as a limited partner, member, and shareholder to information about the Joint Entities' assets or to Defendant's duty to account for his use of those assets.  (Dkt. No. 63, Pl. Reply Br. at 19.)

The Court is not persuaded by Plaintiff's argument that discovery is irrelevant when an accounting is requested pursuant to statute.  Plaintiff has not pointed to any language in any of the Joint Entity Agreements authorizing an accounting on demand.  Accordingly, her request for an accounting must be considered under the "just and reasonable" language of the statutes.

Under Michigan law, a suit for an accounting invokes a court's equitable powers.  *Wilson v. Cont'l Dev. Co.*, 112 F. Supp. 2d 648, 663 (W.D. Mich. 1999) (Bell, J.) (citing *Bellware v. Wolffis*, 154 Mich. App. 715, 720, 397 N.W.2d 861 (1986) (per curiam)).  That is the case even when the request is pursuant to statute.  For example, in discussing an accounting under section 22 of the Michigan Uniform Partnership Act, M.C.L. § 449.22, the Michigan Court of Appeals stated:

> "Accounting in equity is an appropriate remedy as between partners, where the suit involves a partnership relation or interest, or partnership property, especially if fraud or concealment is charged, or the partnership affairs or assets are in a complicated condition."

*Bellware*, 154 Mich. App. at 721 (quoting *Bondy v. Davis*, 40 Mich. App. 153, 159, 198 N.W.2d 418 (1972)).  "A plaintiff seeking an accounting has no right to proceed in equity

if he has an adequate remedy at law." *Wilson*, 112 F. Supp. 2d at 663.  "The burden of proof is on plaintiff to show the inadequacy of the legal remedy." *Id*.  "Michigan courts hold that an accounting in equity is unnecessary where discovery is sufficient to determine the amounts at issue." *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 974 (W.D. Mich. 2004) (Quist, J.).  *See also Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972) ("An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another.  It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate.").

The Court concludes that contrary to Plaintiff's assertions, the availability of discovery is not irrelevant to the Court's determination of whether to order an accounting. Whether an accounting is just and reasonable depends in the first instance on a showing that legal remedies are inadequate.  There must be a showing that Defendant has done something improper or that the financial records are too complicated to comprehend through discovery.

In this case Plaintiff has alleged that Defendant has breached his fiduciary duties.  As the sole managing member, general partner, or director of the Joint Entities, Defendant owes a fiduciary obligation to the other members, partners, and shareholders.  *See Van Stee v. Ransford*, 346 Mich. 116, 126, 77 N.W.2d 346 (1956) (holding that the manager of a commercial enterprise, whether it is a partnership or a joint adventure, owes a fiduciary duty to his partners or joint adventurers); M.C.L. § 449.1403 ("[A] general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to the

partnership and to the other partners."); M.C.L. § 449.21 (partner is accountable as fiduciary).

> The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs.  Partners are held to a standard stricter than the morals of the marketplace and their fiduciary duties should be broadly construed, "connoting not mere honesty but the punctilio of honor most sensitive." 59A Am Jur 2d, Partnership, § 420, p. 453.

*Band*, 176 Mich. App. at 113-14.

"'A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency.'" *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*,  266 Mich. App. 39, 49, 698 N.W.2d 900  (2005) (quoting *Central Cartage Co. v. Fewless*, 232 Mich. App. 517, 524, 591 N.W.2d 422 (1998)).  A breach of fiduciary duty on the basis of self-dealing may arise where the fiduciary "drains the assets of the estate to his benefit by engaging in a transaction with the estate at other than fair market value."  *In re Estate of Jobe*, 165 Mich. App. 774, 778, 419 N.W.2d 65 (1988).

In his briefing Defendant repeatedly reminds the Court that Plaintiff obtained her interests in the Joint Entities by gift, many from Defendant himself, that she has not risked her own capital on behalf of the Joint Entities as he has, and that she has not earned the substantial sums she has already received in distributions from the Joint Entities.  The Court is aware of no legal authority that would suggest that the manner in which Plaintiff obtained

her interests in the Joint Entities affects her rights under the agreements or alters Defendant's fiduciary obligations toward her.

Plaintiff has made a prima facie showing that Defendant has engaged in self-dealing by making interest-free loans from the Joint Entities to the Josh Companies. Defendant has admitted that "[s]ome of these inter-company transactions involve entities in which Eileen does not have an interest." (Dkt. No. 36, Ex. 17, J. Weiner letter of 3/21/06.) In this regard he explained that "it is my responsibility to do what is in the best interests of all of the entities and for all of my Partners and fellow Members. By serving those interests I cannot avoid the by-product of serving my own." (*Id.*)

Plaintiff has also made a prima facie showing that discovery has been difficult because the financial affairs of the Joint Entities are in a complicated condition. Although Defendant has stated that the inter-company transactions between the entities "balance to zero," (Ex. 17, J. Weiner letter of 3/21/06), other evidence tends to refute this assertion. Plaintiff has presented evidence that in 2004 the Joint Entities were on the lending side of $8.3 million in loans, but on the borrowing side of only $2.5 million. (Ex. 5, Adamy Decl. ¶ 5.) The loan schedules prepared by Defendant's own controller and accountant confirm an imbalance between the loans from the Joint Entities to the Josh Companies and the loans from the Josh Companies to the Joint Entities, but even these loan schedules are inconsistent. (Dkt. No. 36, Ex. 27, V. Johnson Loan Schedule; Dkt. No. 36, Ex. 28, Bodenberg Loan Schedule; Dkt. No. 63, Ex. 7, Johnson Dep. 164.) Defendant's controller and accountant acknowledged that they could not readily determine from either the check

register or the general ledger whether a check from a Joint Entity to MCW Co. was a loan or a loan repayment.  (V. Johnson Dep. 139-40, 145, 175-76; Ex 12, Bodenberg Dep. 158.)

Plaintiff has presented evidence that the entities are managed without the usual documents that would make an investigation straightforward.  Despite her requests, Plaintiff has not been able to find documentation evidencing the terms of the loans, including interest rates, terms of default, or due dates.  There are no written management agreements between Chessler or MCW Co. and the Joint Entities specifying services to be rendered or fees to be charged.  There are no invoices showing when or what services have been rendered.  Defendant collects fees only from entities that can afford to pay them.  (Dkt. No. 36, Ex. 3, Am. Answer to Interrog. 3(e).)  Defendant's counsel acknowledged that MCW Co. "does not have invoices or written records to support the specific basis of the charges for leasing and management fees in all instances.  In other words, you will not be able to track the exact amount of a leasing or management fee to a specific transaction, occurrence or event."  (Dkt. No.  36, Ex. 6, ¶ 8.)

The problems associated with the lack of documentation are compounded by conflicting evidence.  For example, the schedule of leasing and management fees produced by Defendant shows that Constitution Blvd. paid $35,100 in management fees over the ten-year period from 1996 to 2005, but the federal tax returns for the same property from 2002 to 2005 report paid management fees of $47,100 in those four years alone, and an additional $23,100 in 2006.  (Dkt. No. 36, Ex. 33 & 34.)  When Constitution Blvd. was sold in 2007, Defendant advised the members that Constitution Blvd. had to pay accrued unpaid

management fees in the amount of $22,767 "from inception."  (Dkt. No. 36, Ex. 10, 3/7/07 email from J. Weiner re Constitution Blvd.)

In response to Plaintiff's concerns about documentation Defendant has presented evidence from his expert witness that the Joint Entities are "well managed from a financial perspective and a management performance perspective."  (Dkt. No.  56, Ex. C, Hall. Aff. ¶ 21.)  According to Defendant's expert, the performance of each individual real estate investment can be determined by an analysis of the federal income tax returns filed on its behalf.  (*Id.* at ¶  51.)  Finally, Defendant contends that "[a]n Investor should be first concerned with how their investment is performing compare to other like-kind income producing real estate investments before they ask to verify every accounting transaction for 12 years." (*Id.*)

Defendant fails to appreciate that even if the Joint Entities as a whole have been profitable, that would not excuse self-dealing or eliminate the possibility of damages.  The prohibition against self-dealing "is not merely against injuring the estate -- it is against profiting out of the position of trust."  *In re Big Rivers Elec. Corp*., 355 F.3d 415, 437 (6th Cir. 2004) (quoting *Mosser v. Darrow*, 341 U.S. 267, 273 (1951)).  When a plaintiff shows self-dealing on the part of a defendant, the burden shifts to the defendant to show that the conduct was fully disclosed and fair.  *Dolan v. Crutcher*, No. 231604, 2003 WL 21465331, at *2 (Mich. App. June 24, 2003).

In response to Plaintiff's assertions of self-dealing Defendant contends that Plaintiff has not shown that his practices have violated the terms of the agreements.  Defendant

contends that the majority of the agreements contain provisions allowing the general partner to enter into leases and loans and to pay fees, and generally to act without consulting the other owners.  (Dkt. No. 56, Ex. F & G.)

Defendant's response does not address his fiduciary duty.   Moreover, while Defendant's characterization of the majority of the agreements may be correct, Plaintiff has presented evidence that the undocumented interest free loans violate the terms of the agreements governing the two largest lenders to the Josh Companies -- Southland Mall Ltd. and Wyoming Mall Ltd.  The Southland Mall Ltd. agreement provides that the partnership shall "not pledge its assets for the benefit of any other entity or make any loans or advances to any entity."    (Dkt. No.  35, Ex. 36 at 3, JTW-00692.)   The Wyoming Mall Ltd. Agreement provides that the general partner "may make loans if property [sic] evidenced and if at a reasonable interest rate."  (Dkt. No. 36, Ex. 36 at 18.)

The evidence of record clearly establishes that there are substantial issues concerning the interest free loans to the Josh Companies and the lack of documentation to support the management and leasing fees.  A forensic accountant may very well be required to unravel the history of loans, lease payments, and management fees, and to determine damages. Nevertheless, the Court concludes that it would not be "just and reasonable" to order a forensic accounting at this time.  If a forensic accounting is to be ordered, its scope must be limited to the matters that are truly in dispute.  Plaintiff has acknowledged that there may be explanations for some or all of the discrepancies in the financial documentation, (Dkt. No. 43, Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 24), but she has not filed a motion to

compel discovery and she has not deposed Defendant, the individual with the most knowledge about the formation, operation and management of the Joint Entities, the Josh Companies, MCW Co. and Chessler. Plaintiff acknowledges that her damages are governed by a three- or six-year limitations period, but she is seeking an accounting for a twelve-year period. Although Plaintiff contends that the length of the accounting period is driven by Defendant's assertion that his fees must be averaged over a twelve-year period because they are not paid regularly, the Court has not been provided with any documentation or admissions from Defendant to support such a broad investigation into the affairs of the Joint Entities. Discovery will assist the Court in determining the scope of any forensic accounting.

With respect to discovery, the Court is troubled by Defendant's assertion that he has no obligation to do more than he has done -- i.e., give Plaintiff access to all of the books and records. According to Defendant, he has already produced 11,500 pages of documents. (J. Weiner Aff. ¶ 63.) Defendant contends, relying on *Didion Milling, Inc. v. Agro Distribution, LLC*, No. 05-C-227, 2007 U.S. Dist. LEXIS 15071 (E.D. Wis. Mar. 2, 2007), that he has "no affirmative duty to locate, copy and compile any financial record" demanded or to provide "detailed explanations of the records." *Id.* at *28. *Didion*, however, did not involve a fiduciary relationship. The court was merely interpreting the access provision in an asset purchase agreement. *Id.* at *23-28. Because Defendant has a fiduciary relationship with Plaintiff, and because Defendant had control over the transactions and the records, he has a greater obligation to make financial information available to Plaintiff in a manner in

which she can make sense of it. Plaintiff and her experts are not required to attempt to decipher Defendant's largely undocumented and often cryptic accounting methodology. The Court will liberally enforce Defendant's obligation to provide information in a manner in which it can be understood by Plaintiff and her counsel.

It is readily apparent from this Court's involvement in this case to date that any remedy will have to address not only damages, but also the manner in which the various Joint Entities are managed in the future. Defendant owes a duty of loyalty to each separate entity. Conflicts of interest are inherent in the manner in which Defendant is running the Joint Entities and the Josh Companies. The current management structure is not sustainable. Without a substantial restructuring of the manner in which the Joint Entities are operated the issue of self-dealing will not go away. In order to address the larger picture, the Court may see fit to appoint a special master pursuant to Rule 53[1] of the Federal Rules of Civil Procedure to review the entire matter and to make recommended findings of fact regarding a structure to avoid such inherent conflicts in the future. Such an appointment may be made

---

[1]Rule 53 provides in pertinent part that a district court may appoint a master to

(B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:

(i) some exceptional condition; or

(ii) the need to perform an accounting or resolve a difficult computation of damages.

Fed. R. Civ. P. 53(a)(1).

on the Court's own motion. *Rosen v. Tenn. Com'r of Fin. and Admin.*, 204 F. Supp. 2d 1061, 1095 (M.D. Tenn. 2001). The recommendations of a special master may not be agreeable to either party. Moreover, the services of a special master to unravel business practices that have been in place for over fifty years will be undoubtedly be expensive. Those expenses will have to be borne by one or both parties, as the special master may recommend and as the court orders. Fed. R. Civ. P. 53(g)(2) (court may order the master's compensation to be paid by one or both parties). "The district court has broad discretion to determine which of the parties to charge, and the district court's decision will not be disturbed absent an abuse of that discretion." *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987) (citing *Morgan v. Kerrigan*, 530 F.2d 401, 427 (1st Cir. 1976)).

The parties currently have an opportunity to avoid the appointment of a special master and to resolve the situation in a manner that is agreeable to both of them. The Court encourages them to be creative and to consider various alternatives that will eliminate the conflicts of interest that are inherent in the current structure. As long as the resolution is consented to by both parties it is of no concern to this Court what the resolution looks like, whether it involves dividing the Joint Entities, merging all of Joint Entities and Josh Companies into one business such that Defendant can truly say that what is good for one real estate venture is good for the whole business, or establishing fee schedules and loan documentation to ensure fair market transactions. The bottom line is that the businesses can no longer be managed in the same manner in which they have been managed to date.

For the reasons stated, Plaintiff's motion for partial summary judgment on Count IV, Accounting, will be denied without prejudice to her ability to revisit the issue after discovery has been exhausted.

## IV.

Plaintiff has also filed a motion for leave to supplement her first amended complaint. (Dkt. No. 74.)  Plaintiff seeks to include allegations regarding matters that have occurred since December 13, 2007, and to add a new claim alleging anticipatory breach of contract. (Dkt. No.  72, Pl. Mot. for Leave to Supplement ¶ 4.)  The new allegations and claim stem from Defendant's statements in a December 16, 2007, letter to Plaintiff and on Defendant's transfer of $437,000 from Balboa-Genesee, one of the Joint Entities located in California, to MCW Co. for management services purportedly rendered between May 1, 2003, and December 31, 2007.  (*Id.* at ¶ 2.)

Defendant contends that Plaintiff's motion should  be denied because it was brought for the improper purpose of attempting to influence the Court on a pending motion, it was brought to disparage Defendant and to cast him in a false light, and the proposed supplementation would be futile.  (Dkt. No. 77, Def. Br. in Resp. 1.)

Plaintiff filed her motion pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.  Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).   Rule 15(d) is the appropriate vehicle for supplementing a complaint to reflect events that occurred after its

filing. *Chapman v. Michigan*, No. 06-10126, 2007 WL 172537, at *1 (E.D. Mich. Jan. 19, 2007). However, Rule 15(a) is the proper vehicle for amending a complaint to assert additional claims for relief. *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007). Because Plaintiff's motion seeks to add allegations concerning events that occurred after the complaint was filed as well as to add an additional claim, the motion should have been bought pursuant to both Rule 15(d) and Rule 15(a). Plaintiff's failure to identify Rule 15(a), however, is of little consequence because her intention was clear and "[t]he Court's discretion in granting or denying leave to supplement a pleading is similar to that under Rule 15(a) regarding amending pleadings." *Chapman*, 2007 WL 172537, at *1.

Under Rule 15(a) leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Defendant contends that Plaintiff's motion should be denied and that Plaintiff should be sanctioned because she filed the motion in bad faith and for improper purposes in violation of Rule 15 and the Standards for Civility in Professional Conduct.

Defendant is correct in his contention that Plaintiff's brief contains language that is unnecessarily disparaging of Defendant and that tends to fan the flames of personal animosity between the parties. Plaintiff's use of phrases such as "heightened campaign of retaliation," "exploit his position . . . to plunder its assets," and "unequivocal declaration of

war," in her brief are unduly inflammatory.  Counsel should know better than to expect that the Court will be impressed or swayed by such fiery rhetoric.  The Court expects attorneys who practice before it to familiarize themselves with this District's Standards for Civility in Professional Conduct which can be found on the Court's Internet site, and to conform their conduct to those standards.  This admonition is directed at counsel for both parties.  What the litigants to this action in particular need are attorneys who will assist in civilizing and bringing reason to their business dispute, rather than escalating the acrimony.

The Standards of Civility, however, "are voluntary and shall not be used as a basis for litigation or sanctions."  W.D. Mich. Standards for Civility, Preamble.  Accordingly, the Standards cannot be the basis for denying Plaintiff's motion or for sanctions.  A request for sanctions is typically brought under Rule 11.  However, Defendant has not met the safe-harbor provisions of Rule 11(c)(2).  *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997).  The inflammatory language Defendant challenges is found in Plaintiff's brief rather than in the proposed supplements to the amended complaint.  The Court does not read the references to "justice" and "just terms" in Rules 15(a) and (d) as limits on the language in a motion or brief.  The Court does not find that the proposed supplemented and amended complaint was filed for an improper purpose or that the amendments would be futile.  Plaintiff's proposed allegations of recent conduct are consistent with the themes alleged in her amended complaint.  Defendant will not be prejudiced by answering these allegations in the present lawsuit rather than piecemeal in a separate lawsuit.  Furthermore, even though Defendant contends that some of Plaintiff's allegations could not withstand a motion for

27

summary judgment, the futility of a proposed amendment is judged by whether it would withstand a Rule 12(b)(6) motion to dismiss rather than a Rule 56 motion for summary judgment. *Rose*, 203 F.3d at 420. The Court is satisfied that the proposed supplements and amendments could withstand a motion to dismiss. Accordingly, Plaintiff's motion for leave to supplement her first amended complaint will be granted.

**V.**

An order consistent with this opinion will be entered.


Date:    March 18, 2008                      /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    CHIEF UNITED STATES DISTRICT JUDGE